**Affirmed and Memorandum Opinion filed December 31, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00619-CR

**DAVID STILES, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 424th District Court**
**Burnet County, Texas**
**Trial Court Cause No. 46487**

## MEMORANDUM OPINION

A jury found appellant, David Stiles, Jr., guilty of sexual assault. In a single issue, appellant contends his Sixth Amendment right to a speedy trial was violated. We affirm.

# I.    RIGHT TO A SPEEDY TRIAL

In his sole issue, appellant contends that a delay of more than four years and five months between his arrest and trial violated his Sixth Amendment right to a speedy trial.

## A. Legal Principles

"The Sixth Amendment to the United States Constitution, made applicable through the Fourteenth Amendment, guarantees a speedy trial to an accused." *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). A court should consider the four *Barker* factors in addressing a speedy-trial claim: (1) the length of delay, (2) the State's reason for delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of the delay. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). To trigger a full *Barker* analysis, a defendant must first make a threshold showing that the interval between accusation and trial is "presumptively prejudicial." *Balderas*, 517 S.W.3d at 767. Generally, courts deem delays approaching one year as unreasonable enough to trigger further inquiry. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

We give almost total deference to the trial court's historical fact findings that are supported by the record and draw reasonable inferences from those facts necessary to support the trial court's findings. *Balderas*, 517 S.W.3d at 767–68. When a defendant loses a speedy trial claim in the trial court, we presume that the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports. *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008). We will not consider any record evidence that was not before the trial court when it made its ruling. *Balderas*, 517 S.W.3d at 768.  Review

of the *Barker* factors involves both fact determinations and legal conclusions, but, the balancing test is a purely legal question that we review de novo. *Id.*

## B. Background

Appellant was charged with a sexual assault that occurred in October 2011. Appellant filed a motion to set aside the indictment for violating his constitutional right to a speedy trial on May 7, 2018. Trial was set for, and occurred on, May 21, 2018. Prior to trial, the trial court conducted a hearing on appellant's motion.

The case investigator from the Burnet County Sheriff's Department testified regarding the investigation, timeline, and reason for the delay in bringing the case to trial. On October 22, 2011, the complainant reported that she had been sexually assaulted by appellant. The sexual assault occurred while complainant, complainant's boyfriend, appellant, appellant's father, appellant's two brothers, and a few other individuals were visiting a lake house in Burnet County for the weekend. Shortly after the assault was reported, the investigator interviewed the complainant and her boyfriend, and attempted to contact appellant and his father. The investigator managed to speak briefly with both appellant and appellant's father. Neither appellant nor his father returned any of the investigator's numerous phone calls or messages. The investigator testified that she was aware that appellant worked for the family business, located approximately seventy miles south of Burnet County. She did not go to appellant's location to attempt to take his statement or otherwise interview him.

Appellant was arrested for the sexual assault in December 2013. Ten months later, in October 2014, the investigator obtained a search warrant to obtain appellant's DNA sample. The investigator testified that the delay between the arrest and the search warrant was because she was waiting for appellant to let her know that he had retained an attorney. Through counsel, appellant agreed to meet with the

3

investigator to allow the search warrant to be executed. A few days after executing the search warrant, the investigator submitted appellant's DNA swab to the lab for analysis. Two years later, in November 2016, the lab transmitted the results to the investigator. In April 2017, nearly five months after the lab issued its analysis and more than three years after his arrest, appellant was indicted for the sexual assault.

At the hearing, appellant's father testified regarding who was present at the lake house when the sexual assault occurred and whether those individuals were present to provide testimony at trial. He indicated that one person who had been present at the lake house was unable to be located. He admitted that he believed that all the other individuals that had been at the lake house were present to testify. Appellant's father testified that he would have been able to give a more detailed explanation and recollection of events had he been questioned sooner and that he expected the other witnesses would have the same issue.

The docket sheet indicates that an arraignment hearing was set for May 2017 and that appellant waived his right to that hearing by motion. Between June and December 2017, there were four status hearings which were all reset by agreement. Trial was scheduled for March 5, 2018, but due to the unavailability of a State's witness, the trial setting was continued until May 21, 2018. Appellant filed a motion to set aside the indictment for failure to afford his constitutional right to a speedy trial on May 7, 2018.

After having "considered the motion and weighed the *Barker* factors" the trial court denied the motion and proceeded to trial on the same day. The trial court did not issue any order, fact findings, or legal conclusions.

**C. Analysis**

*1. Length of Delay*

"In determining whether a speedy trial has been denied, the length of delay is measured from the time the defendant was accused." *McCarty v. State*, 498 S.W.2d 212, 214 (Tex. Crim. App. 1973). The State concedes that the length of delay in this case triggers further inquiry and analysis of the *Barker* factors. *See Balderas*, 517 S.W.3d at 767. The delay of four years and five months between arrest and trial stretched far beyond the minimum needed to trigger the inquiry. *See Dragoo*, 96 S.W.3d at 314. As a result, this factor weighs heavily in favor of finding a violation of the speedy trial right. *See id.*

*2. Reason for Delay*

The State has the burden to justify the delay. *Cantu*, 253 S.W.3d at 280. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. A valid reason, such as a missing witness or good faith plea negotiations, should serve to justify appropriate delay. *See id.*; *State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999). When the State fails to establish a reason for the delay, we may presume neither a deliberate attempt to prejudice the defense nor a valid reason for the delay. *Dragoo*, 96 S.W.3d at 314; *State v. Wei*, 447 S.W.3d 549, 544 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The State argues that the evidence shows that the State was not willfully delaying trial, but instead was merely

negligent in preparing and taking the case to trial. As a result, the State argues this factor should not weigh heavily against it.

One of the largest delays in moving this case to trial was the two-year period during which the lab analysis on the DNA samples was pending. The investigator testified that without the lab analysis, there was no physical evidence linking appellant to the sexual assault and the case would otherwise be solely based on the complainant's testimony against appellant. While this circumstance might be an adequate justification for some of the delay, it does not take into account the delay between the arrest and obtaining a search warrant, and from indictment to trial. Some of the delay—a period of eight months between indictment and trial—was due to agreed resets. The State also moved for a continuance in March 2018, due to witness unavailability. Thus, while there was a significant delay, the portion to which appellant agreed, as well as a continuance due to witness unavailability is considered justified. *See Barker*, 407 U.S. at 531; *Munoz*, 991 S.W.2d at 824. The State did not offer any other reason to justify the other delays. Absent a reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense, nor a valid reason for the delay. *See Dragoo*, 96 S.W.3d at 314. This factor weighs against the State, but not heavily. *See id.*

### 3. Assertion of the Right

Although a motion for a speedy trial cannot be filed until formal charges are made, the right to one can be asserted in other ways. *Cantu*, 253 S.W.3d at 283. "Invocation of the speedy trial provision . . . need not await indictment, information, or other formal charge." *United States v. Marion*, 404 U.S. 307, 321 (1971); *see also Dillingham v. United States*, 423 U.S. 64, 65 (1975) (per curiam). Where a defendant does not ask for a speedy trial, and instead only asks for dismissal, it is incumbent upon the defendant to show some attempt to get the case into court so that trial could

occur in a speedy manner. *Cantu*, 253 S.W.3d at 284. An accused who has been arrested but not formally charged has a choice:

> [H]e can wait until he is charged, then file a motion for a speedy trial, and, if this request is not honored, he can then file a motion to dismiss because he diligently sought what he was entitled to—a speedy trial. Or, he can wait until he is charged and simply file a motion to dismiss if he can show that he diligently tried to move the case into court before formal charges were filed.

*Id*. at 284–85. In *Cantu*, the defendant never sought or requested a speedy trial, only an outright dismissal and tried to prove that he acted on the desire for a speedy resolution before he was charged. *Id*. at 285. Here, like in *Cantu*, there was no showing or evidence that appellant ever sought or requested a speedy trial. Appellant sought an outright dismissal without attempting to show that he acted on the desire for a speedy resolution. Instead of asserting his right to a speedy trial after being indicted, appellant agreed to resets of the trial for eight months. Nothing in the record reveals that appellant asserted his right to a speedy trial prior to his motion to dismiss filed just before trial. *See Barker*, 407 U.S. at 532 (emphasizing that a defendant's failure to assert his right to a speedy trial "will make it more difficult for a defendant to prove that he was denied a speedy trial"); *Munoz*, 991 S.W.2d at 826 (concluding inaction dispositive of the "assertion of the right" *Barker* factor where nothing moved for or filed prior to defendant's motion to dismiss the indictment expressly reflected an assertion of defendant's speedy trial right).

Appellant argues that he timely asserted his right to a speedy trial through motion, citing *Phillips v. State* in support. 650 S.W.2d 396 (Tex. Crim. App. 1983). In *Phillips*, the defendant was unaware that he had been indicted for over a year. *Id*. at 400. Once the defendant was notified of the indictment, the defendant then delayed asserting his right to a speedy trial for another four months and filed his motion to dismiss only seven days prior to trial. *Id*. at 401. Instead of requesting a speedy trial,

7

the defendant sought dismissal. *Id.* However, the record did not reflect when the defendant had retained counsel, what investigation counsel undertook of the matter, and the length of time the investigation took. *Id.* The record also revealed that a co-defendant had died in the interim, which the defendant asserted caused him prejudice. *Id.*

In this case, unlike in *Phillips*, appellant cannot assert that he did not know of the allegations asserted against him. The case investigator testified that she had called appellant and his father at least fourteen times to discuss the allegations. Appellant retained counsel in December 2013, shortly after his arrest. Even assuming a lengthy investigation by counsel, there is nothing in the record to reflect that appellant attempted to get his case to trial in a speedy manner before seeking dismissal. Between appellant's arrest and trial setting, a period of more than four years, there is no indication that appellant took any action to assert his right to a speedy trial despite being represented by counsel during that entire period. Instead, after indictment, appellant agreed to multiple resets that further delayed trial. Trial occurred within two weeks of appellant filing his speedy trial motion. There is also no assertion that a key fact witness died or was otherwise unavailable due to the lapse of time between arrest and trial. The longer the delay is, the more heavily the defendant's inaction weighs against him. *See Dragoo*, 96 S.W.3d at 314.

The absence of any evidence to show that appellant attempted to get his case to trial in a speedy fashion and that his first motion sought dismissal weighs heavily against his claim that he truly sought a speedy trial. *See Cantu*, 253 S.W.3d at 284 ("[F]ailure to diligently and vigorously seek a rapid resolution is entitled to strong evidentiary weight." (quotation omitted)); *Dragoo* 96 S.W.3d at 315 ("In view of

8

the lengthy delay here, in which [the defendant] quietly acquiesced, this factor weighs heavily against finding a violation of the speedy trial right.").

### 4. *Prejudice*

"When a court analyzes the prejudice to the defendant, it must do so in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Cantu*, 253 S.W.2d at 285. Of these, the last is the most serious because the defendant's inability to prepare his case skews the fairness of the entire system. *Id.* "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett v. United States*, 505 U.S. 647, 655 (1992). "On the other hand, this 'presumption of prejudice' is 'extenuated . . . by the defendant's acquiescence' in the delay." *Dragoo*, 96 S.W.3d at 315 (omission in original) (quoting *Doggett*, 505 U.S. at 658).

Though the delay is considered presumptively prejudicial to the defense, appellant failed to demonstrate any prejudice. *See id*. at 315–16 ("prejudice" factor weighed against violation of defendant's speedy trial right even though three-and-a-half-year delay was "patently excessive" and "presumptively prejudicial" because defendant acquiesced in the delay and failed to demonstrate prejudice). Namely, there was only one person of six total witnesses that was not available to testify at trial. Appellant made no argument that the missing witness was a material fact witness or that the missing witness could offer testimony that was in any way different from those of the witnesses that would testify during trial. Appellant's father testified at the hearing that his memory would have been better had the trial occurred closer to the incident. Appellant did not testify regarding the effect that the pending charges had on him or the conditions that he had to meet for his bond.

9

Appellant agreed to multiple resets that delayed trial. The first assertion of appellant's speedy trial right was not made until two-weeks before the May 2018 trial setting. Because appellant acquiesced in the delay and failed to demonstrate prejudice, this factor weighs against a speedy trial violation. *See id*.; *Cantu*, 253 S.W.3d at 285 (defendant's testimony regarding ulcer and weekly check-ins with bondsman considered evidence of "some degree of personal anxiety" but not one of the "major evils protected against by the speedy trial guarantee").

### 5. *Balancing the Barker Factors*

When balanced together, the weight of the four factors falls against concluding that a violation of appellant's right to a speedy trial occurred. *See Barker*, 407 U.S. at 534 (where defendant was not seriously prejudiced by five-year delay between arrest and trial and defendant did not want speedy trial, defendant's Sixth Amendment right to a speedy trial not violated); *Phipps v. State*, 630 S.W.2d 942, 946 (Tex. Crim. App. 1982) (where defendant demonstrated no prejudice by four-year delay between arrest and trial and defendant waited until one month before trial to assert his right to a speedy trial, defendant's Sixth Amendment right to a speedy trial not violated); *Dragoo*, 96 S.W.3d at 316 (where defendant quietly acquiesced in delay from three-and-a-half-years, showed no prejudice, and failed to assert

speedy trial right until just prior to trial by requesting dismissal, defendant's Sixth Amendment right to a speedy trial not violated).

We overrule appellant's sole issue.

## II. CONCLUSION

Having overruled appellant's sole issue, we affirm the judgment of the trial court.


/s/     Ken Wise
         Justice


Panel consists of Chief Justice Frost and Justices Wise and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).